COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Beales and Senior Judge Clements
Argued at Richmond, Virginia

CHARLENE LANETTE GREGORY

                                                        OPINION BY
v.      Record No. 0691-13-2              JUDGE RANDOLPH A. BEALES
                                                     NOVEMBER 25, 2014

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Bradley B. Cavedo, Judge

Patricia Palmer Nagel for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Appellant Charlene Lanette Gregory (appellant) was convicted by a jury in the Circuit Court

of the City of Richmond of (1) possession of a firearm by a convicted felon under Code

§ 18.2-308.2 and (2) possession with intent to distribute marijuana under Code § 18.2-248.1.  On

appeal to this Court, appellant argues that the trial court erred by denying appellant's motion to

suppress her statements to the police, contending that "law enforcement conducted a custodial

interrogation of appellant without availing her of her Miranda rights and after appellant gave the

Commonwealth proper notice of appellant's claims" as required by Code § 19.2-266.2.  Appellant

also argues on appeal that the trial court erred by allowing an expert witness, Detective O'Connell,

to "testify as to intent," which appellant contends was "the ultimate issue of fact" pertaining to her

charge for possession with intent to distribute marijuana.[1]  For the following reasons, we affirm

appellant's convictions.

_____

    [1] Appellant also requested appellate review on four other assignments of error noted in
her petition for appeal, but the Court did not grant the petition for appeal on those assignments of
error.

## I. BACKGROUND

Applying the established standard of review on appeal, we consider the evidence at trial "'in the light most favorable to the Commonwealth, as we must since it was the prevailing party'" in the trial court. Beasley v. Commonwealth, 60 Va. App. 381, 391, 728 S.E.2d 499, 504 (2012) (quoting Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004)). On February 16, 2012, Richmond police responded to the Hillside Court area of Richmond upon the report of shots fired. As they were investigating this report, they saw a woman running in the area of appellant's apartment so they approached the apartment and knocked on the door. Appellant answered the door. Office Butler testified that he asked appellant if he and the other officers could "come inside and talk to [her]" and that appellant replied that they could. Once inside her apartment, Butler noticed in plain view "an ashtray with four marijuana blunts inside." Butler asked appellant about those, and noted that "she said she had been smoking weed." Butler also told appellant that he "smelled both burnt and unburnt marijuana." Appellant then produced a small bag of marijuana from the top of a kitchen cabinet and a larger quantity of marijuana in plastic bags. She also produced some cash from a fruit snack box.

Officer Butler asked for appellant's "consent to search the rest of the residence to make sure there's nothing else illegal in the house," and he testified that she "said yes." (i.e. that she would consent). At about the same time, another officer, Officer Spann, came back downstairs from the upstairs, where he had taken appellant's children, and reported that "there's some ammunition upstairs" – causing concern among the officers that there might be a gun in the house. The officers inquired about whether she had a firearm, and, according to Butler, appellant "eventually directed Officer Spann to the closet that was downstairs by the kitchen," where a revolver was found.

While Officer Spann was not called as a witness at the suppression hearing, he did testify at the trial which immediately followed the suppression hearing. He stated that, when he asked

appellant why she would keep a loaded firearm in a place where children could find and take it, she indicated that she needed the gun for protection because "she said she was selling weed." Appellant was arrested and taken into custody.

Thirteen days prior to trial, appellant's trial counsel filed, as required by Code § 19.2-266.2, a written motion to suppress "all evidence seized and all statements made incident to or as a result of an illegal entry into and warrantless search of her residence and interrogation," claiming that "such evidence was obtained in violation of the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States, and Article I, §§ 8, 10 and 11 of the Constitution of Virginia." As support for the motion to suppress, appellant's counsel focused on arguing that the police executed an unlawful, warrantless search and seizure of appellant's home without having any exigent circumstances and without appellant's consent.[2] The written motion to suppress did not specifically allege that appellant's incriminating statements to the police were the product of an unlawful custodial interrogation in violation of Miranda v. Arizona, 384 U.S. 436 (1966). While the written motion to suppress characterized Gregory's incriminating statements as "fruit of the poisonous tree," the written motion did not develop an argument pertaining to a Fifth Amendment violation *under Miranda* although it referred generally to the Fourth, Fifth, and Fourteenth Amendments. The trial judge denied the motion to suppress, stating that "failure to give Miranda warnings [is] not before the court in this motion." He explained, "The motion deals with unlawful entry, warrantless search. The boilerplate language in the introductory paragraph is not enough to put the Commonwealth on notice that failure to give Miranda warnings at a particular time is fatal to the use of statements that were made."

---

[2] Appellant's assignment of error related to a warrantless search without her consent or without exigent circumstances was not granted, and, therefore, it is not presently before the Court.

Appellant's jury trial immediately followed the denial of her motion to suppress. The Commonwealth introduced (during the direct examination of a Department of Forensic Science analyst) a certificate of analysis that the analyst prepared indicating that 4.9 ounces of marijuana were obtained from appellant's residence. In addition, there was evidence admitted that a digital scale and $250 in cash were seized from appellant's residence. The prosecutor asked Richmond Police Detective Daniel O'Connell, who was received as an expert in the street-level distribution of marijuana, whether he had drawn "a conclusion" whether "this marijuana that was seized was consistent or inconsistent with personal use." Appellant's attorney objected to this question on the ground that the question pointed to "the ultimate issue for the jury." The trial judge disagreed and overruled the objection.

When O'Connell testified that the circumstances were "inconsistent with personal use," the prosecutor asked O'Connell to explain what "factors went into your analysis." O'Connell then testified, "The first factor is drug dealing is very – it's a business. It's a big business. And the defendant in this case in my opinion was running it as a business." Appellant's counsel objected, stating specifically, "That goes beyond what he's here to testify to, whether it's inconsistent or consistent with personal use or distribution." Defense counsel added, "Concluding that my client is running a business is not proper testimony for his expertise." The prosecutor responded that, if O'Connell could reasonably "extrapolate" from the circumstances that "it was some kind of business enterprise," then the testimony was appropriate.

The trial judge allowed the testimony to be admitted, making the specific finding that Detective O'Connell's opinion testimony that appellant was running a business was "within [O'Connell's] expertise." The trial judge did not expressly rule on whether this particular testimony was improper "ultimate issue" testimony from an expert witness. The jury found appellant guilty of both offenses, and appellant timely appealed her convictions to this Court.

- 4 -

A. Motion to Suppress the Evidence

Appellant challenges the trial court's decision to deny her motion to suppress incriminating statements that she made to the police. "When reviewing a denial of a motion to suppress evidence, an appellate court considers the evidence in the light most favorable to the Commonwealth and will accord the Commonwealth the benefit of all reasonable inferences fairly deducible from that evidence." Branham v. Commonwealth, 283 Va. 273, 279, 720 S.E.2d 74, 77 (2012) (citing Sidney v. Commonwealth, 280 Va. 517, 520, 702 S.E.2d 124, 126 (2010)). In addition, "the defendant has the burden of showing that even when the evidence is reviewed in that light, denying the motion to suppress was reversible error." Id. (citing Sidney, 280 Va. at 522, 702 S.E.2d at 127). "We review de novo the trial court's application of the law to the particular facts of the case." Id. (citing Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 913 (2008)). The trial court's findings of fact are not disturbed unless plainly wrong or without evidence to support them. See Code § 8.01-680.

Appellant argues that, because she was not Mirandized before she made various incriminating statements to the police, the trial court erred in not suppressing those statements. However, Code § 19.2-266.2 states, in pertinent part:

> A. Defense motions or objections seeking (i) suppression of evidence on the grounds such evidence was obtained in violation of the provisions of the Fourth, Fifth or Sixth Amendments of the Constitution of the United States or Article I, Section 8, 10, or 11 of the Constitution of Virginia proscribing illegal searches and seizures and protecting rights against self-incrimination . . . shall be raised by motion or objection.
>
> *B. Such a motion or objection in a proceeding in circuit court shall be raised in writing, before trial.* The motions or objections shall be filed and notice given to opposing counsel not later than seven days before trial in circuit court . . . . A hearing on all such motions or objections shall be held not later than three days prior to trial in circuit court, unless such period is waived by the accused, as set by

the trial judge.  The circuit court may, however, for good cause
shown and in the interest of justice, permit the motions or objections
to be raised at a later time.

(Emphasis added).

In this case, appellant's counsel did file a timely pre-trial written motion to suppress.
However, the issue here is whether the written motion appellant filed with the circuit court actually
raised a Miranda claim so as to advise the Commonwealth and the trial judge of that specific claim
prior to trial.  The conclusion of the written motion states, "This evidence was the immediate fruit of
the entry and search.  Any incriminating statements were likewise *the fruit of an illegal entry,
search, and seizure*.  Mapp v. Ohio, 367 U.S. 643 (1961)."  (Emphasis added).  In Mapp, the United
States Supreme Court applied the *Fourth Amendment* exclusionary rule to the States.  Id. at 648; see
also, e.g., County of Henrico v. Ehlers, 237 Va. 594, 602, 379 S.E.2d 457, 461 (1989); Bellamy v.
Commonwealth, 60 Va. App. 125, 130, 724 S.E.2d 232, 235 (2012).

Nowhere in appellant's "Motion, Memorandum and Notice to Suppress Pursuant to Va.
Code § 19.2-266.2" did appellant ever refer to Miranda or even to "custodial interrogation."  As the
Commonwealth argues, there are a number of rights enumerated in the Fifth Amendment so even a
blanket referral to the Fifth Amendment does not necessarily give the Commonwealth or the trial
judge notice of a Miranda argument by appellant, as required by Code § 19.2-266.2.[3]  Furthermore,
the Commonwealth argues that Rule 3A:9(b) applies here, which states:

Any motion made before trial shall be in writing if made in a circuit
court, unless the court for good cause shown permits an oral motion.

---

[3] For example, a defendant might claim that an incriminating statement or confession
actually "was coerced, in violation of his Fifth Amendment rights."  Sellers v. Commonwealth,
41 Va. App. 268, 276, 584 S.E.2d 452, 456 (2003).  Such a claim is not premised on the failure
to give Miranda warnings but on other circumstances, such as threats made against a suspect that
involve physical coercion, that could render the suspect's statements involuntary.  See id. at 276,
584 S.E.2d at 457.

> *A motion shall state with particularity the ground or grounds on which it is based.*

(Emphasis added).

Because a <u>Miranda</u> claim is not actually raised – and certainly not raised "with particularity" – in the pre-trial written motion to suppress, the Commonwealth asserts that appellant failed to satisfy Rule 3A:9(b) with respect to her <u>Miranda</u> claim that she later raised at the suppression hearing. Appellant actually had at least two ways to argue in her written motion to suppress that her statements to the officer should be suppressed. First, she could argue, as she did, that the statements were derivative of an illegal search (that was not consensual) and seizure under the Fourth Amendment (i.e., "fruit of the poisonous tree"). Second, she could argue that the statements were illegally obtained – independent of any Fourth Amendment violation – because the statements were the product of an unlawful custodial interrogation. Here, appellant's counsel made the first argument (i.e., fruit of the poisonous tree) in her written motion to suppress. While never making the second argument in the written motion to suppress, appellant changed course during the actual suppression hearing and tried to make that argument based on <u>Miranda</u>. Because her written motion failed to refer to <u>Miranda</u> or to allege an improper custodial interrogation, the trial court ruled correctly that Code § 19.2-266.2 would not allow appellant to make such an argument in the actual suppression hearing.

### B. "Ultimate Issue" Testimony

On appeal we review the trial court's decisions as to the admissibility of testimony to determine if the trial court abused its discretion. <u>See, e.g.</u>, <u>Coe v. Commonwealth</u>, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986). Appellant argues that the trial judge abused his discretion in permitting Detective O'Connell to deliver opinion testimony on the "ultimate issue of fact" – i.e., appellant's intent to distribute marijuana. Appellant specifically points to Detective O'Connell's expert opinion testimony that appellant was "running it as a business." Appellant contends that this testimony

invaded the jury's role of determining whether appellant had the required intent to distribute, given that "running it as a business" would suggest that appellant was selling marijuana.

There is a longstanding jurisprudential rule against an expert in a criminal case giving "his opinion upon the precise or ultimate fact in issue." See Webb v. Commonwealth, 204 Va. 24, 33, 129 S.E.2d 22, 29 (1963). This rule is now codified in Virginia's Rules of Evidence, which states, "In criminal proceedings, opinion testimony on the ultimate issues of fact is not admissible." Rule 2:704(b).

Assuming without deciding that it was error for the trial court to allow Detective O'Connell's testimony that appellant was "running it as a business," it was nevertheless harmless error because there was so much other evidence properly before the trial court for the jury to convict appellant. Not only was there all of the marijuana found in several locations in appellant's residence, including the marijuana that appellant retrieved for the police, but also appellant's comment that she had the firearm in her home because she "sold weed." Code § 8.01-678 states, "When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any other defect, imperfection, or omission in the record, or for any error committed on the trial." See also Ferguson v. Commonwealth, 396 S.E.2d 675 (1990) (stating that Code § 8.01-678 makes harmless error review "required in *all* cases"). On brief, appellant argues that any harmless error review must be under the constitutional harmless error standard, but she provides no authority for that contention. The Supreme Court's post-Llamera[4] decision in Rodriguez v. Commonwealth, 249 Va. 203, 454 S.E.2d 725 (1995), indicates that the non-constitutional harmless error standard should be used here. Id. at 208, 454 S.E.2d at 728.

---

[4] See Llamera v. Commonwealth, 243 Va. 262, 414 S.E.2d 597 (1992).

In that regard, after Detective O'Connell's testimony that appellant was "running it as a business," the prosecutor questioned O'Connell – *without objection* – as follows:

> Q: And so the evidence was that there was $250 in this box along with the bags of marijuana. What conclusion can you draw from that without getting into how things were folded?
>
> A: *That it is set up for distribution.* There were also other factors leading into that in that there was more marijuana recovered outside of the box. There was U.S. currency found on her person. So everything – my conclusion is based on *everything that was needed for dealing marijuana* was inside that box, five separate individual bags of marijuana with over four ounces, $250 U.S. currency which is ample currency to give change if somebody needs change.

(Emphasis added).

In addition, Detective O'Connell then testified it was "common" for "drug dealers" to have digital scales and firearms – and that, even without considering appellant's statement to Officer Spann that she had a firearm because she "sold weed," the detective testified that he "would still draw the conclusion that it's inconsistent with personal use *and it was there for distribution*." (Emphasis added). Appellant also did not object to these statements from Detective O'Connell.

In short, none of these statements by Detective O'Connell were objected to by appellant's counsel at trial, and so these statements – which were admitted at trial without any "ultimate issue" objection – are now part of the record before this Court on appeal.[5] Therefore, we conclude that the

---

[5] These statements from Detective O'Connell reflected his expert opinion that the circumstances in this case were generally consistent with the distribution of illegal drugs. They were of a different nature than the detective's earlier opinion testimony that appellant specifically was "running" a "business." Therefore, appellant's objection to O'Connell's testimony that appellant was "running it as a business" did not place the trial court on notice that appellant also intended to object to O'Connell's later testimony that the circumstances here were consistent with the distribution of illegal drugs – to which no objection was made. See Brown v. Commonwealth, 279 Va. 210, 217, 688 S.E.2d 185, 189 (2010) (explaining that Code § 8.01-384 only eliminates the need to make a further objection when the "trial court is aware of a litigant's legal position and the litigant did not expressly waive" that position); cf. Donahue v. Commonwealth, 225 Va. 145, 153, 300 S.E.2d 768, 772 (1983) (holding that, once the trial judge overruled the defendant's objection to the admission of a handwritten note, the defendant was not required to object once again every time the Commonwealth referred to the same handwritten

testimony by Detective O'Connell that appellant does challenge on appeal as reaching the "ultimate issue" of intent is *cumulative* of other expert testimony, which was never challenged on the ground that it violated the "ultimate issue" rule. See Delaware v. Van Arsdall, 475 U.S. 673, 674 (1986) (explaining that the question of whether an error "is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts," including whether the testimony that should not have been admitted "was cumulative" of other evidence before the factfinder); see also, e.g., Sargent v. Commonwealth, 5 Va. App. 143, 154, 360 S.E.2d 895, 903 (1987).

Furthermore, at trial, Officer Spann testified that he asked appellant why she had "a firearm where her children could get to it." According to Spann, appellant replied that she had the firearm because "she was selling weed" and that she was selling marijuana because "she needed the rent money." Therefore, since we decided *supra* that appellant's statements are admissible – and need not be suppressed – Officer Spann's testimony here also is a significant factor in a harmless error analysis relating to any improper testimony by Detective O'Connell because the jury could conclude from appellant's admission to Officer Spann that she intended to distribute the marijuana in her possession.

In Llamera v. Commonwealth, 243 Va. 262, 414 S.E.2d 597 (1992), the Supreme Court reaffirmed the rule that an expert witness "may be permitted to express his opinion relative to the existence or nonexistence of facts not within common knowledge" – but "cannot give his opinion upon the precise or ultimate fact in issue, which must be left to the jury or to the court trying the case without a jury for determination." Id. at 264, 414 S.E.2d at 598 (internal quotation marks and citations omitted). In Llamera, the Supreme Court held that the trial court's decision to permit an

note); Johnson v. Commonwealth, 20 Va. App. 547, 552-53, 458 S.E.2d 599, 601-02 (1995) (en banc) (holding that the issue was preserved for appeal where the defendant's counsel properly objected that the defendant could not be convicted of use of a firearm in the attempted commission of unlawful wounding, counsel never wavered in this position, and the issue remained the same throughout the proceedings).

expert to opine that the quantity of cocaine involved in that case "would suggest that the owner of the cocaine *was a person who sold cocaine*" was reversible error because that testimony "clearly expressed an opinion upon an ultimate issue of fact" – i.e., whether Llamera had the requisite intent to distribute cocaine. Id. at 265, 414 S.E.2d at 599 (emphasis added).[6]

In addition, in Llamera, the trial court had inculpatory evidence of Llamera's involvement, when he essentially confessed to the police "that the cocaine was his and that he used and sold cocaine." Id. at 264, 414 S.E.2d at 598. The Supreme Court found that was not enough additional evidence to say that the error in admitting the testimony on the ultimate issue was harmless error. Id. at 265-66, 414 S.E.2d at 599.

The circumstances of this case, however, are distinguishable from those in Llamera. Here, we have appellant's acknowledgement to the police that she possessed the firearm because she sold marijuana. However, unlike in Llamera, this *de facto* confession must be considered *in addition to* other portions of Detective O'Connell's testimony to which appellant never objected. Here, we have additional expert opinion testimony relating to drug distribution at two other points during trial – which the expert made without objection – and from this testimony the jury also could have drawn the conclusion that appellant was selling marijuana.

---

[6] This Court has interpreted the Supreme Court's Llamera decision as not affecting this Court's pre-Llamera holding in Davis v. Commonwealth, 12 Va. App. 728, 733, 406 S.E.2d 922, 925 (1991), which held that the factfinder could rely on expert testimony that the quantity of illegal drugs in question "was inconsistent with an individual's personal use." See Shackleford v. Commonwealth, 32 Va. App. 307, 327, 528 S.E.2d 123, 133 (2000) (where this Court, in a post-Llamera decision, explained, "Expert testimony, usually that of a police officer familiar with narcotics, is routinely offered to prove the significance of the weight and packaging of drugs regarding whether it is for personal use."); see also, e.g., Burrell v. Commonwealth, 58 Va. App. 417, 434, 710 S.E.2d 509, 517 (2011); Ervin v. Commonwealth, 57 Va. App. 495, 522, 704 S.E.2d 135, 148 (2011) (en banc); Williams v. Commonwealth, 52 Va. App. 194, 202, 662 S.E.2d 627, 631 (2008); Askew v. Commonwealth, 40 Va. App. 104, 109, 578 S.E.2d 58, 60 (2003). Thus, Detective O'Connell's testimony that the circumstances here were inconsistent with personal use of marijuana was properly before the jury for its consideration.

Moreover, the Supreme Court has also explained on multiple occasions, "Several factors may constitute probative evidence of intent to distribute a controlled substance. These factors include the quantity of the drugs seized, the manner in which they are packaged, and the presence of an unusual amount of cash, equipment related to drug distribution, or firearms." McCain v. Commonwealth, 261 Va. 483, 493, 545 S.E.2d 541, 547 (2001); see also, e.g., Dukes v. Commonwealth, 227 Va. 119, 122, 313 S.E.2d 382, 383 (1984); Colbert v. Commonwealth, 219 Va. 1, 4, 244 S.E.2d 748, 749 (1978). In this case, the jury had before it several factors that also would support the conclusion that appellant intended to distribute drugs – i.e., that 4.9 ounces of marijuana were obtained from appellant's residence, that much of this marijuana was individually packaged, that $250 was recovered from a fruit snack box, that a digital scale was also recovered from appellant's residence, and that appellant possessed a firearm. See Bandy v. Commonwealth, 52 Va. App. 510, 518, 664 S.E.2d 519, 522 (2008) ("Courts have often recognized that 'the connection between illegal drug operations and guns is a tight one.'" (quoting Jones v. Commonwealth, 272 Va. 692, 701 n.3, 636 S.E.2d 403, 407 n.3 (2006))); see also United States v. Grogins, 163 F.3d 795, 799 (4th Cir. 1998). The jury could reach its conclusion after considering all of these factors, in addition to Detective O'Connell's expert opinion testimony that the circumstances here were inconsistent with personal use of marijuana – which, as we have explained, was properly admitted by the trial judge. See supra at 11, fn. 6.

In short, unlike in Llamera, here there is overwhelming evidence in the record on appeal that proves the ultimate issue before the jury. Therefore, even assuming without deciding that the admission of Detective O'Connell's testimony that appellant was "running it as a business" was error, that testimony is only cumulative of significant other expert testimony that was admitted without objection – as well as the evidence of appellant's admission that she possessed the firearm because she "sold weed" – and also other evidence and testimony in the record indicating that the

circumstances here were inconsistent with solely a personal use of marijuana. See Van Arsdall, 475 U.S. at 674; Sargeant, 5 Va. App. at 154, 360 S.E.2d at 903. The result in Llamera is not controlling here because, in this case, we have significantly more evidence in the record that makes any evidence admitted by error here simply cumulative such that it could not have affected the jury's decision. See Rodriguez, 249 Va. at 454 S.E.2d at 728 ("In sum, the accused has had a fair trial according to law, and the proof is conclusive of his guilt; any error in admitting the expert's testimony was utterly harmless." (citing Code § 8.01-678)).

Any error in admitting the detective's testimony that appellant is "running it as a business" was simply harmless error. See Code § 8.01-678. For these reasons, we will not disturb appellant's conviction for possession of marijuana with intent to distribute or appellant's conviction for possession of a firearm by a convicted felon.

### III.  CONCLUSION

The trial court did not err in denying the motion to suppress the statements appellant made to the officers that were admitted into evidence by the trial court. Even assuming without deciding that it was error to allow the detective to testify that appellant was "running it as a business" because it was testimony on the ultimate issue in the case, that error was harmless because it was cumulative of significant other such evidence before the court that was admitted without objection. Accordingly, we affirm both of appellant's felony convictions.

Affirmed.